IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01606-PAB-CBS

CATHY BOTTOMS,
    Plaintiff,
v.

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,
    Defendant.

---

**ORDER ON MOTION TO CLARIFY PLAINTIFF'S
RIGHT TO CONDUCT DISCOVERY**

---

Magistrate Judge Shaffer

    Once again, this court is called upon to consider whether, and to what extent, discovery will be permitted in an action brought under the Employee Retirement Income Security Act of 1974 ("ERISA").  *See, e.g., Hatch v. Federated Retail Holdings, Inc.*, 2007 WL 841800 (D. Colo. 2007); *Jeffryes v. The Hartford Life and Accident Insurance Co.*, 2006 WL 1186493 (D. Colo. 2006).  This subject has been addressed by other Magistrate Judges sitting in the District of Colorado, *see, e.g., Carberry v. Metropolitan Life Insurance Co.*, 2010 WL 1435543 (D. Colo. 2010) (Boland, M.J.); *Almeida v. Hartford Life and Accident Insurance Co.*, 2010 WL 743520 (D. Colo. 2010) (Mix, M.J.); *Paul v. Hartford Life and Accident Insurance Co.*, 2008 WL 2945607 (D. Colo. 2008) (Hegarty, M.J.)*; Dubrovin v. Ball Corporation Consolidated Welfare Benefit Plan for Employees*, 2008 WL 5427986 (D. Colo. 2008) (Tafoya, M.J.), yet members of the ERISA bar find every opportunity to re-argue the same points and cite the same authorities. In the face of these recurring discovery disputes, my hope is to shift the focus of the discussion

and, hopefully, eliminate this needless motion practice.

## BACKGROUND

Plaintiff Cathy Bottoms initiated the instant action to recover long-term disability ("LTD") benefits as a participant in the group policy provided by her former employer, Safeway, Inc. Ms. Bottoms' request for short-term disability ("STD") benefits was approved on October 6, 2007 and she continued to receive those benefits through April 4, 2008, which was the maximum STD benefit period. Although Liberty Life approved Ms. Bottoms' claim for LTD benefits for the period from April 5, 2008 through April 5, 2010, her benefits were terminated with a letter dated April 28, 2010. Liberty Life claimed to have determined "[b]ased on our medical and vocational reviews, . . . that you can perform, with reasonable continuity, the material and substantial duties of the above occupations based on your capacity and skill levels." Ms. Bottoms filed an administrative appeal of that termination decision on October 25, 2010. Defendant upheld its adverse benefit determination on December 9, 2010, after concluding that Plaintiff did not meet the definition of disability as stated in the Safeway LTD policy "in the absence of medical evidence to support [her] inability to perform alternative occupations."

Plaintiff asserts that Liberty Life's denial of LTD benefits was "unreasonable, incorrect, improper, and not supported by substantial evidence" and, as such, was arbitrary, capricious and in bad faith. *See* Scheduling Order in an Action for Review of Administrative Record (doc. #15), at 4. Not surprisingly, Defendant Liberty Life disputes those assertions and insists that its decision to terminate Ms. Bottoms' LTD benefits was properly supported by the medical information in her claim file and additional information submitted by a board-certified reviewing physician.

The parties appear to agree that Liberty Life had full discretion in reviewing and paying benefit claims under the Safeway group plan, thus implicating an arbitrary and capricious standard of review. *Cf. Graham v. Hartford Life & Accident Insurance Co.*, 589 F.3d 1345, 1357 (10th Cir. 2009).

> Under the arbitrary and capricious standard of review, we will uphold an administrator's decision "so long as it is predicated on a reasonable basis." We will uphold an administrator's decision "unless it is not grounded on *any* reasonable basis." Certain indicia of an arbitrary and capricious denial of benefits include "lack of substantial evidence, mistake of law, bad faith and conflict of interest by the fiduciary."

*Id.* at 1357 (internal citations omitted). Where the plan administrator has an inherent conflict in exercising its discretion to pay claims while maintaining its own financial solvency, that conflict of interest should be viewed "as a factor in determining whether the plan administrator has abused its discretion in denying benefits." *Id.* at 1358 (quoting *Metropolitan Lie Insurance Co. v. Glenn,* 554 U.S. 105, 108 (2008)). That analysis, in turn, embraces "a 'combination-of-factors method of review' that allows judges to 'tak[e] account of several different, often case-specific, factors, reaching a result by weighing all together.'" *Id.*

On October 17, 2011, Ms. Bottoms filed the instant Motion to Clarify Plaintiff's Right to Conduct Discovery (doc. #40), and attached her proposed First Set of Interrogatories and Requests for Production of Documents to Defendant Liberty Life Assurance Company of Boston (doc. #40-1), consisting of seventeen interrogatories and twelve requests for production. Plaintiff contends that her "limited discovery" is "narrowly tailored and seek[s] only evidence relevant to the claim and, in particular, to the conflict of interest and procedural irregularities." *See* Motion to Clarify Plaintiff's Right to Conduct Discovery, at 3 and 6. Ms. Bottoms also seeks leave to

"take brief depositions of the individuals who denied the claim, a Rule 30(b)(6) deposition of the Defendant, and potentially those of Robert P. Millstein, M.D. and Benjamin W. Berg, M.D., after written discovery discloses more information about their prior claims involvement."

Defendant's Response to Plaintiff's Motion to Clarify (doc. #44) opposes the requested discovery. Liberty Life suggests that Plaintiff is entitled to little, if any, discovery in this case in light of Defendant's self-serving assertion that it "took active steps to reduce potential bias and promote accuracy by walling off its claims administrators from those interested in its finances and imposing management checks that penalize inaccurate decision making." In support of this position, Liberty Life cites an affidavit provided by the manager of its own Appeal Review Unit. *But see Garrett v. Albright*, 2008 WL 681766 (W.D. Mo. 2008) (noting that "[t]he Federal Rules of Civil Procedure do not entitle Defendants to determine what the Plaintiffs will need in terms of clearly relevant evidence"). In addition, Defendant argues that the proposed interrogatories and requests for production are both overbroad and unduly burdensome, and therefore contrary to the fundamental policies governing ERISA litigation.

**ANALYSIS**

As I noted in *Jeffryes v. The Hartford Life and Accident Insurance Co.*, 2006 WL 1186493, at *1 (D. Colo. 2006), Rule 26(b)(1) of the Federal Rules of Civil Procedure permits discovery "regarding any matter . . . that is relevant to the claim or defense of any party" or discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence." S*ee* Fed. R. Civ. P. 26(b)(1). *See also Williams v. Board of County Commissioners*, 192 F.R.D. 698, 702 (D. Kan. 2000) (a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to a claim

or defense). I also acknowledged that discovery in ERISA cases must be evaluated in light of the policy objectives underlying that statute. "ERISA was enacted to promote the interests of employees and their beneficiaries in employment benefit plans and to protect their contractually defined benefits," *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989), while also providing "a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *Perry v. Simplicity Engineering*, 900 F.2d 963, 967 (6th Cir. 1990). I suggested in *Jeffryes* that Fed. R. Civ. P. 26(b)(2)(C) provides the court with considerable discretion in harmonizing these competing interests. The court is expected to limit the frequency or extent of discovery if it determines, *inter alia*,

> the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount of the controversy, . . . the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

*Jeffryes v. The Hartford Life and Accident Insurance Co.*, 2006 WL 1186493, at *1.

Since my decision in *Jeffryes*, the Tenth Circuit has addressed the issue of discovery in the context of an ERISA action implicating a plan administrator's dual roles. Conceding that prior decisions had failed to "provide clear guidance to the district court regarding the appropriate standard for resolving discovery requests in these types of cases," the Tenth Circuit distinguished between prohibited discovery of "extra-record materials" bearing on a claimant's eligibility for benefits and "discovery related to the scope and impact of a dual role conflict of interest [that] may, at times, be appropriate." *Murphy v. Deloitte & Touche Group Insurance Plan*, 619 F.3d 1151, 1162 (10th Cir. 2010). Thus, for example, the court in *Murphy* suggested that discovery addressing how a plan administrator structures compensation for independent

physicians reviewing a plan participant's claim might be relevant to the determination of how or to what extent the plan insulates the independent reviewers from the administrator's own financial interests. *Id.* at 1164, n.7

In setting forth "the appropriate standard for discovery related to a dual role conflict of interest," the Tenth Circuit disclaimed any intention to create special rules for these ERISA cases, preferring instead to rely on the well-established parameters of Rule 26(b)(1) and (b)(2) of the Federal Rules of Civil Procedure and the admonition that neither a claimant nor administrator should conduct discovery in a manner inconsistent with the speedy, inexpensive, and efficient resolution of an ERISA claim. *Id.* at 1163. The decision in *Murphy* noted that "Rule 26(b)(2) . . . protects against, *inter alia*, overly burdensome discovery requests, discovery of cumulative materials, and overly costly discovery requests," and imposed upon the claimant the burden of establishing the necessity or propriety of the desired discovery. *Id.* Ultimately, the trial court "must bear in the mind both the need for a fair and informed resolution of the claim and the need for a speedy, inexpensive, and efficient resolution of the claim." *Id.* at 1164.

It should be noted that Rule 26(b)(2)(C) places an obligation on the trial court to limit the frequency or extent of discovery otherwise permitted by Rule 26(b)(1) based on a balancing analysis. Indeed, Rule 26(b)(2)(C) is written in mandatory terms. Rule 26(b)(2)(C), however, does not speak directly to the obligations of the claimant seeking discovery or the plan administrator resisting those efforts. To the extent the analysis in *Murphy* focuses on the court's role, it fails to acknowledge that the responsibility for conducting discovery in a reasonable, proportionate manner rests in the first instance with the parties and their attorneys.

Rule 26(g) of the Federal Rules of Civil Procedure imposes concomitant obligations on

the parties serving and responding to discovery requests.  *See* Fed. R. Civ. P. 26(g).  By signing a discovery request, response or objection, counsel of record is certifying that "to the best of [their] knowledge, information and belief formed after a reasonable inquiry," the request, response or objection is consistent with the Federal Rules of Civil Procedure and existing law, is not interposed for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the costs of litigation), and is neither unreasonable nor unduly burdensome, considering the needs of the case, the amount in controversy, or the significance of the issues at stake in the litigation.  *See* Fed. R. Civ. P. 26(g)(1)(B).  The court must impose sanctions, either on motion or its own initiative, if counsel violates his or her certification obligation without substantial justification.  *See* Fed. R. Civ. P. 26(g)(3).

"Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through Rule 37," and "obligates each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection."  *High Point Sarl v. Sprint Nextel Corp.*, 2011 WL 4036424, at *11 (D. Kan. 2011) (quoting 1983 Advisory Committee Comments to Fed. R. Civ. P. 26(g)).

> [T]he rule aspires to eliminate one of the most prevalent of all discovery abuses: kneejerk discovery requests served without consideration of cost or burden to the responding party.  Despite the requirements of the rule, however, the reality appears to be that with respect to certain discovery, principally interrogatories and document production requests, lawyers customarily serve requests that are far broader, more redundant and burdensome than necessary to obtain sufficient facts to enable them to resolve the case through motion, settlement or trial.

*Mancia v. Mayflower Textile Services Co.*, 253 F.R.D. 354, 358 (D. Md. 2008).  *See also Qualcomm Inc. v. Broadcom Corp.*, 2008 WL 66932, at *7 (S.D. Cal.) ("Rule 26(g) . . . provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that

obligates each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection."), *vacated in part on other grounds*, 2008 WL 638108 (S.D. Cal. 2008).

Counsel does not satisfy their obligations under Rule 26(g) by robotically recycling discovery requests propounded in earlier actions. Indeed, that approach to discovery would be antithetical to the "stop and think" mandate underlying Rule 26(g). *Cf. Robbins v. Camden City Board of Education*, 105 F.R.D. 49, 56-57 (D. N.J. 1985) (criticizing the use of pattern interrogatories that are based on little more than "some word-processing machine's memory of prior litigation"); *Crown Center Redevelopment Corp. v. Westinghouse Electric Corp.*, 82 F.R.D. 108, 111 (W.D. Mo. 1979) (suggesting that the "routine filing of lengthy 'standard form' sets of interrogatories . . . almost automatically spawns the filing of objections and motions for protective orders").

Three examples from Plaintiff Bottoms' First Set of Interrogatories illustrate why the court's invocation of Rule 26(g) is justified. Ms. Bottoms would like Defendant to "*identify and describe each and every document* that explains Liberty Life's procedure for choosing medical and other experts to participate in reviewing claims;" to *"identify and describe any policies or procedures* (written or unwritten) maintained by Liberty Life with regard to the manner in which a reviewing physician is to conduct his or her review;" and to "*describe Liberty Life's policies and procedures* for calculating the salary necessary for a claimant to be capable of 'gainful' employment . . . and *identify any written policies or procedures which describe this process*." *See* Plaintiff's First Set of Interrogatories and Requests for Production of Documents to Defendant Liberty Life Assurance Company of Boston (doc. #40-1), at Interrogatory Nos. 4, 11 and 16 (emphasis added). These interrogatories are not limited to a particular period of time,

8

type of claim, or the specific experts or consultants who reviewed Ms. Bottoms' claim.

Plaintiff's First Set of Interrogatories also includes the following Definition/Instruction:

    6.    A request for the identification of or a description of documents shall be deemed to include a request for the following information with respect to each such document:

    a.    The nature and substance of the document with sufficient particularity to enable the same to be precisely identified;

    b.    The date, if any, which the document bears;

    c.    The date the document was sent;

    d.    The date the document was received;

    e.    The person or persons authorizing or executing the document and the identity of all persons participating in the preparation thereof, if different from the person executing it;

    f.    The persons to whom the document is addressed;

    g.    Any file number used in connection with the document;

    h.    The present location of the original or legible copy of the document;

    i.    The full name, present address, telephone number and employment of each person or person (sic.) having possession, custody or control of each such original or legible copy;

    j.    In the case of documents which are public record, the date, Book and Page and Reception number of recording; and

    h.    Whether the document will be voluntarily made available for inspection and copying.

*Id.* at 4-5.

This court is at a loss to see how much of the information sought in this

Definition/Instruction could be relevant to Ms. Bottoms' claim, or how any marginal benefit derived from this information would outweigh the burden or expense imposed by this Instruction.[1] *Cf. Hilt v. SFC Inc.*, 170 F.R.D. 182, 188 (D. Kan. 1997) (expressing concern that an expansive definition of the term "identify" invites a legitimate objection that the definition renders the attendant interrogatories too burdensome and therefore useless); *Diversified Products Corp. v. Sports Center Co.*, 42 F.R.D. 3, 4 (D. Md. 1967) (holding that "the use of unreasonable 'definitions' may render . . . interrogatories so burdensome to the answering party and to the court, that objections to the entire series should be sustained with sanctions").

Plaintiff also asks for the "complete personnel files" for each person "who was *in any way involved* in the handling, processing or denial of Plaintiff's claim for benefits." *See* Plaintiff's First Set of Interrogatories and Requests for Production of Documents to Defendant Liberty Life Assurance Company of Boston (doc. #40-1), at Interrogatory No. 2 and Request for Production No. 2 (emphasis added). These requests sweep too broadly by failing to distinguish between Liberty Life employees who were involved in purely clerical activities ("handling [or] processing") and the decision-makers actually responsible for "denying" Ms. Bottoms' claim. The breadth of this particular interrogatory is striking given Ms. Bottoms' stated reliance on

---

[1]Notably, Plaintiff's Request for Production No. 12 asks Defendant to "produce each writing identified by you in your responses to the interrogatories listed above." Given Ms. Bottoms' request for physical production of any identified documents, Definition/Instruction No. 6 seems unnecessary and, at the very least, serves as the practical equivalent of an interrogatory with multiple discrete subparts. *Cf. Banks v. Office of the Senate Sergeant-at-Arms*, 222 F.R.D. 7 (D.D.C. 2004) (in applying the "discrete subpart" provision in Fed. R. Civ. P. 33(a)(1), the trial court suggested that a "more pragmatic approach" would be to consider whether counsel's interrogatories "threaten the purpose of the rule by putting together in a single question distinct areas of inquiry that should be kept separate"). Counsel should not be permitted to violate the intent of Rule 33(a)(1) by serving interrogatories in the guise of an instruction or definition.

Magistrate Judge Mix's order in *Almeida v. Hartford Life and Accident Insurance Co.*, 2010 WL 743520, at *3 (D. Colo. 2010), which narrowly permitted discovery directed to the "employees involved in denying [plaintiff's] claim." To the extent that Plaintiff's Motion to Clarify claims to need "information regarding the individuals responsible for terminating Ms. Bottom's claims," counsel must concede that Interrogatory No. 2 as drafted is overbroad.

Plaintiff's request for "complete personnel files" also is facially overbroad. *Cf. Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1034 (9th Cir. 1990) (holding that where relevant information contained in personnel files can be developed by interrogatories, the files should not be produced because a "general search could reach well beyond the legitimate inquiries necessary to [the] litigation"); *Acton v. Target Corp.*, 2009 WL 3380645, at *4 (W.D. Wash. 2009) (characterizing as "strikingly overbroad" a request for the production of complete personnel files for dozens of the defendant's employees "without identifying any justification for reviewing their entire files"); *Professional Recovery Services, Inc. v. General Electric Capital Corp.*, 2009 WL 137326, at *4 (D.N.J. 2009) ("[I]t has been recognized that personnel files, even of a party's agent, may contain information that is both private and irrelevant to the case, and that special care must be taken before personnel files are turned over to an adverse party"); *Coker v. Duke & Co., Inc.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998) (noting a strong public policy against the discovery of personnel files and holding that production is required only if the material sought is clearly relevant and the need for discovery is compelling because the information sought is not otherwise readily obtainable). The demand for "complete personnel files" is particularly objectionable given the specific references in Request for Production No. 2 to performance evaluations, evidence of bonuses received, and evidence of awards given. The potential

relevance of the latter categories of information cannot justify a fishing expedition into other non-relevant components of a personnel file that are plainly entitled to some privacy protection. It is difficult to reconcile Ms. Bottoms' sweeping request for production of "complete personnel files" with the requirements and policy objectives underlying Rule 26(g)

The court similarly finds that Liberty Life's objections to Plaintiff's proposed discovery are deficient. "[O]ne of the purposes of Rule 26(g) was 'to bring an end to the [ ] abusive practice of objecting to discovery requests reflexively – but not reflectively – and without a factual basis." *Linnebur v. United Telephone Association*, 2011 WL 5103300, at *7 (D. Kan. 2011) (quoting *Mancia v. Mayflower Textile Services Co.*, 253 F.R.D. at 358). Here, Defendant Liberty Life objects to Ms. Bottoms' interrogatories and requests for production as "overly broad, burdensome, unduly costly, [and] not designed to lead to the discovery of admissible evidence outside the administrative record in this case," and "prays that Plaintiff's motion be denied." These boilerplate objections should not suffice to bar discovery in this or any other ERISA case. *Cf. Cartel Asset Management v. Owen Financial Corp.*, 2010 WL 502721, at *8 (D. Colo. 2010) (holding that defendant's invocation of boilerplate objections to plaintiff's discovery requests was "wholly ineffective"); *EEOC v. Outback Steak House of Florida, Inc.*, 251 F.R.D. 603, 608 (D. Colo. 2008) ("'the burden of showing that the requested discovery is objectionable falls on [the responding party]' and it 'cannot be satisfied by merely asserting a boilerplate objection to discovery without providing concrete substantiation'").

Rules 33 and 34 of the Federal Rules of Civil Procedure require a responding party to answer to the extent an interrogatory or request for production is not objectionable. An objection challenging a discovery request as "overbroad" implicitly concedes that the request encompasses

some information that is properly discoverable. The responding party is obligated to reasonably construe the discovery requests, *see, e.g.., King-Hardy v. Bloomfield Board of Education*, 2002 WL 32506294, at *5 (D. Conn. 2002), and cannot evade its obligations under Rules 33 and 34 by summarily dismissing an interrogatory or request for production as "overbroad." *See also* Fed. R. Civ. P. 37(a)(4) ("an evasive or incomplete . . . response must be treated as a failure to . . . respond").

Similarly, a party objecting to a discovery request as "unduly burdensome" cannot rest on that self-serving or conclusory statement. *See, e.g., Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 380 (D. Kan. 2005) (the party asserting an undue burden objection "has the burden to show not only undue burden or expense, but that the burden or expense is unreasonable in light of the benefits to be secured from the discovery," and must "provide an affidavit or other evidentiary proof of the time or expense involved"); *Horizon Holdings, LLC v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002) (in order to justify an undue burden objection, the objecting party is obligated "to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents"). Liberty Life's Response to Plaintiff's Motion to Clarify is devoid of these supporting facts.

Prior to the decision in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. at 105, an ERISA plaintiff subject to an arbitrary and capricious standard of review and confronted with inconsistent legal precedent might be inclined to serve expansive requests with the expectation, or hope, that the trial court might pare back those requests but still allow some discovery. *Compare Spangler v. Unum Life Insurance Company of America*, 38 F. Supp. 2d 952, 955 (N.D.

Okl. 1999) (concluding that additional discovery on the issue of conflict of interest was unnecessary as the conflict created by the plan administrator's multiple roles was apparent) and *Caldwell v. Life Insurance Company of North America*, 165 F.R.D. 633, 637 (D. Kan. 1996) (suggesting that the arbitrary and capricious standard of review "only precludes discovery on issues related to the merits of the claim for benefits"). Given the lack of "clarity in our case law" as to the appropriate standard of discovery in ERISA conflict of interest cases, *see Murphy v. Deloitte & Touche Group Insurance*, 619 F.3d at 1157, that "half-a-loaf" approach was certain to spawn expensive and time-consuming motion practice. The Supreme Court and the Tenth Circuit have now made clear that dual role conflict of interest cases will not be governed by special procedural rules or discovery practices that only serve to slow the efficient resolution of an ERISA case. Going forward, counsel for ERISA claimants and plan administrators should be expected to draft discovery requests, responses and objections that comply in all respects with the requirements of Rules 26(g), 33 and 34. That approach, hopefully, will largely eliminate the need for threshold motions such as the one filed by Ms. Bottoms in this case.

## CONCLUSION

Plaintiff's Motion to Clarify Plaintiff's Right to Conduct Discovery (doc. #40) is GRANTED IN PART and DENIED IN PART. The court will not permit Plaintiff Bottoms to conduct discovery directed to the factual merits of her claim. *Cf. Caldwell v. Life Insurance Company of North America*, 165 F.R.D. at 637 (holding that plaintiff was not entitled to pursue discovery that she could or should have presented to the plan administrator before filing his lawsuit). However, I will permit Ms. Bottoms, with appropriate limitations, to conduct discovery directed to the *procedures* employed by Liberty Life in compiling the administrative record and

reaching its decision to end Plaintiff's LTD benefits.  I will also permit Plaintiff to serve discovery requests directed to the dual role conflict of interest confronting Liberty Life and its employees.  Nothing in this Order is intended to preclude Defendant Liberty Life from properly objecting, consistent with the requirements of Rule 26(g), to Plaintiff's discovery requests as modified by this Order.

With respect to Interrogatory No. 2, the court will strike the phrase "in any way" and the references to "handling" and "processing."  Plaintiff may seek the identity of those individuals responsible for the decision to deny Plaintiff's claim for LTD benefits.

With respect to Interrogatory No. 3, the court will strike the word "education" as overbroad and limit the requested information to "training" provided or required by Liberty Life with respect to the processing, denial or approval of LTD benefits.

With respect to Interrogatory No. 4, Plaintiff may request the identification of those documents that set forth or memorialize Liberty Life's procedures for selecting medical and other experts to participate in the review of LTD benefit claims.  The court will strike the word "describe" as superfluous and unnecessarily burdensome given Plaintiff's request for production of the same documents.

With respect to Interrogatory Nos. 5, 6, 7 and 8, the court will limit the requested information to the years 2008, 2009 and 2010.  Subject to that limitation, the court also will require responses to Interrogatory Nos. 9 and 10.

With respect to Interrogatory No. 11, the court will strike the word "describe" and permit Plaintiff to request the identification of any policies or procedures (written or unwritten) maintained by Liberty Life during the period 2008 through 2010 with regard to the manner in

which a reviewing physician is to conduct his or her review. Again, the work "describe" is superfluous and unnecessarily burdensome given Ms. Bottoms' request for the production of those same documents.

With respect to Interrogatory No. 12, the court will limit the request to conversations or communications between MES Solutions, Dr. Millstein or Dr. Berg and the Liberty Life employees responsible for the decision to deny Plaintiff's claim for LTD benefits.

With respect to Interrogatory Nos. 13 and 14, the court will limit the request to those Liberty Life employees responsible for the decision to deny Plaintiff's claim for LTD benefits and the years 2008 through 2010.

The court will require Defendant to respond to Interrogatory No. 15 as written.

With respect to Interrogatory No. 16, the court will strike the reference to "describe" and will require Defendant to identify Liberty Life's written policies and procedures in effect during the period 2008 through 2010 that were used to calculate the salary necessary for a claimant to be capable of "gainful" employment (as identified in Liberty Life's "Vocational Rehabilitation Referral"). The reference to "describe" is superfluous and unnecessarily burdensome given Ms. Bottoms' request for the production of those same documents.

The court will strike Interrogatory No. 17 as premature in the absence of an order permitting Plaintiff to take any depositions. At this juncture, the court is not prepared to find that depositions are necessary, or that the cost of those depositions would be proportionate to the needs of the case or the issues at stake in the litigation. Plaintiff may move for leave to take depositions only upon a showing of good cause consistent with the factors set forth in Rule 26(b)(2)(C).

Request for Production No. 1 is denied as patently overbroad to the extent it seeks "all documents which reflect or contain studies, reports, analyses, summaries or compilations concerning the outcome of any challenges by insureds or plan participants during the last ten years." The court concludes that any tangential relevance associated with the production of the requested documents would likely be outweighed by the concomitant burdens. *Cf. Murphy v. Deloitte & Touche Group Insuranc,* 619 F.3d at 1157 (suggesting that a discovery request seeking extensive information on how a plan administrator and independent physicians had resolved other cases "could create a morass of secondary and remote arguments" and entail expansive discovery the utility of which would be outweighed by undue burden and cost "in all but the most unusual cases").

With respect to Request for Production No. 2, the court will strike the reference to "the complete personnel files" and will limit production to evaluations performed by supervisors, evidence of bonuses received and evidence of awards given. These materials should be produced pursuant to a stipulated protective order tendered by the parties and approved by the court.

I will require responses to Request for Production No. 3, but limit the subject documents to the period 2008 through 2010.

With respect to Request for Production No. 4, the court will not require Defendant to respond. The Request is simply too broad to the extent it seeks "any documents that discuss or reference targets or goals measured by the number of closed and/or denied claims from 2007 to present." The court is at a loss to comprehend the universe of documents that might "discuss" those subjects, particularly as the Request is not limited to specific "targets or goals," to LTD claims or to the particular employees who denied Ms. Bottoms' claim. Defendant should not be

left to guess as to the outer boundary of responsive documents.

The court will require Defendant to respond to Request for Production No. 5 as drafted.

With respect to Request for Production No. 6, the court will require Defendant to produce all documents setting forth or memorializing any financial agreement between Liberty Life and MES Solutions and/or Dr. Berg, and between Liberty Life and Dr. Millstein, but will limit the request for "all income or 1099 tax forms issued by the Defendant to these companies or physicians" to the period 2008 through 2010. These materials should be produced pursuant to a stipulated protective order tendered by the parties and approved by the court.

The court will require Defendant to respond to Request for Production Nos. 7, 8, and 9, but will limit the Requests to the period 2008 through 2010.

At this juncture, the court will not require Liberty Life to respond to Request for Production Nos. 10 and 11. These Requests, on their face, appear to seek information that is largely irrelevant to the conflict of interest issue and/or to Ms. Bottoms' own claim for benefits. The court will, however, require Liberty Life to produce a copy of any documentation exchanged between Safeway, Inc. and Liberty Life regarding the benefits claim asserted by Ms. Bottoms.

The court will require Defendant to produce all writings identified in interrogatory responses served in conformity with this Order.

DATED this 13th day of December, 2011.

BY THE COURT

s/ Craig B. Shaffer
United States Magistrate Judge